IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

In re:

      Nancy M. Barrick,

              Debtor.

-----------------------------------------------------------------x

Ardent Harmony Fund Inc. and Argyle Funds SPC, Inc.,

              Plaintiffs,

v.

Nancy M. Barrick

              Defendant.

  -----------------------------------------------------------------x

Case No. 19-75822-AST

Chapter 7

Adv. Proc. No. 20-8018-AST

## <u>ORDER DENYING MOTION FOR SUMMARY JUDGMENT</u>

Pending before the Court is the Motion for Summary Judgment [dkt. item 38] filed by Plaintiffs-Creditors Ardent Harmony Fund Inc. and Argyle Funds SPC, Inc. (together, "Plaintiffs") against Nancy M. Barrick, Defendant-Debtor ("Debtor"). Plaintiffs seek summary judgment on their claims for a determination of exception to discharge brought under § 523(a)(2)(A), (a)(4) and (a)(6) of title 11 of the United States Code (the "Bankruptcy Code")[1] and on their claims for denial of discharge brought under § 727(a)(2), (3), (4), and (5). The summary judgment record, including pleadings, exceed 2,000 pages. All parties are represented by counsel. For the reasons set forth, the Court finds and determines that Plaintiffs have failed to meet their burden of proof and their request for summary judgment on all claims is denied.

---

[1] Hereinafter, any reference to "section[s]" or "§[§]" will refer to the indicated section(s) of the Bankruptcy Code.

# I. BACKGROUND AND PROCEDURAL HISTORY[2]

## A. Pre-Petition Events

This litigation begins several lawsuits prior to Debtor filing for bankruptcy relief and the commencement of this Adversary Proceeding. That prior litigation began in 2016, when Plaintiffs filed a lawsuit (the "2016 State Court Case") in the Supreme Court of the State of New York, Nassau County (the "State Court"). Plaintiffs sued certain corporate entities, RMP Capital Corp., EBC Funding LLC, and Bruin Funding LLC (collectively, the "RMP Entities"), all of which were alleged to have been owned or controlled by Debtor's husband, Donald Barrick,[3] or by both Mr. Barrick and Debtor. Debtor, however, was not a defendant in the 2016 State Court Case. The RMP Entities ultimately were found liable for perpetrating a fraud through Mr. Barrick's credit factor services business, and Plaintiffs were awarded, collectively, approximately $53 million in damages (the "2016 Court Judgment").

When the RMP Entities thereafter did not satisfy the 2016 State Court Judgment, Plaintiffs filed for an order to show cause against the RMP Entities and Mr. Barrick, seeking to

---

[2] The factual background and procedural history are taken from the pleadings, exhibits and other papers submitted by the parties and the public dockets in this case. Local Bankruptcy Rule 7056-1 requires that a party seeking summary judgment file a statement of facts the party alleges to be without a genuine dispute, and that each fact be supported by a citation to admissible evidence in the summary judgment record as required by Rule 56(c) of the Federal Rules of Civil Procedure (each, a "Rule"). *See* Fed. R. Bankr. P. 7056(e)(making applicable Rule 56, as adopted, in adversary proceedings in bankruptcy cases; E.D.N.Y. LBR 7056-1. Similarly, facts alleged by a party opposing summary judgment must be set out in a LBR 7056-1 statement supported by admissible testimonial or documentary evidence, and with citation to conflicting testimonial or documentary evidence as required by Rule 56(c); a party may not simply deny alleged material facts by a conclusory statement, or without citation to admissible evidence. This Court has not considered any fact alleged by Plaintiffs or Debtor which is not properly sourced or supported. This Court has also accepted as true properly supported facts alleged by Plaintiffs and Debtor which have not been properly refuted or challenged by Plaintiffs or Debtor. *See* Fed. R. Bankr. P. 7056(e); E.D.N.Y. LBR 7056-1; *Meredith Corp. v. Sesac, LLC*, 1 F. Supp.3d 180, 186 n.3 (S.D.N.Y. 2014).

[3] On December 15, 2022, Mr. Barrick filed *pro se* a petition for relief under chapter 13 of the Bankruptcy Code, thereby commencing his own bankruptcy case (E.D.N.Y. Bankr. Case No. 22-73580-AST).

have Mr. Barrick held personally liable for the RMP Entities' debt. In 2017, Plaintiffs obtained a judgment against Mr. Barrick in the amount of approximately $76 million.

Plaintiffs then pursued post-judgment collection efforts, during which they discovered that, between April 2011 and April 2016 (the "Transfer Period"), approximately $8.3 million of the RMP Entities' assets allegedly had been transferred to Debtor's personal checking account (the "Transfers"). In April 2017, Plaintiffs filed a lawsuit against Debtor in State Court (the "2017 State Court Case"), seeking to recover the Transfers on theories including constructive fraudulent transfer, actual fraudulent transfer and unjust enrichment. Specifically, Plaintiffs pleaded, *inter alia*, claims under New York Debtor and Creditor Law §§ 273, 274, 276, and 278, and a common law claim for unjust enrichment.

Debtor, proceeding *pro se*, filed an out-of-time answer and otherwise did not properly participate in the 2017 State Court Case. On October 11, 2017, the State Court entered a default judgment against Debtor (the "2017 State Court Judgment") [dkt. item 40, exh. 10], finding that Debtor had "fail[ed] to appear at a mandatory preliminary conference," and failed "to respond to discovery demands and otherwise participate in this litigation." In the 2017 State Court Judgment, the State Court entered two awards against Debtor: first, an award for approximately $8.3 million in damages, plus interest (for a total of approximately $10.6 million) and second, an award for almost $40,000 in damages, dating from an April 2014 judgment against Debtor. Critically, the 2017 State Court Judgment did not specify on which of the multiple causes of action Plaintiffs obtained their monetary awards against Debtor.

Debtor, still proceeding *pro se*, then sought to challenge the 2017 State Court Judgment, variously attempting to appeal, to have the judgment vacated, and to have a temporary restraining order against enforcement of the judgment entered—all while she failed to satisfy the

judgment and avoided post-judgment discovery. Her post-judgment litigation efforts were not well-received by the State Court. In an August 22, 2019[4] order denying Debtor's motion to vacate the default judgment and for issuance of a restraining order [dkt. item 40, at exh. 19], the state court wrote: "Based upon . . . the detailed history of the defendant's dilatory tactics, the lack of a reasonable excuse for default and a failure to put for a potentially meritorious defense, the motion to vacate the default is denied in its entirety."

On August 21, 2019, the Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code.

## B.  Post-Petition Events

On January 24, 2020, Plaintiffs filed a complaint against Debtor commencing this Adversary Proceeding, seeking a determination that their debts are excepted from discharge under § 523(a)(2)(A), (4) and (6), and for denial of discharge under § 727(a)(2), (3), (4), and (5).

On July 29, 2021, Plaintiffs filed the instant Motion for Summary Judgment, seeking judgment as a matter of law on all their claims. Debtor filed an Objection [dkt. item 47]; Plaintiffs thereafter filed a Reply [dkt. item 48].

The voluminous summary judgment record includes numerous pleadings from the state court cases, records, documents, and deposition transcripts, as well as affidavits or sworn declarations of Debtor, Mr. Barrick, and Casey Laffey, a partner at the law firm of Reed Smith, L.L.P.; Reed Smith is counsel for Plaintiffs.[5] This extensive record makes clear that genuine issue of material fact exist on all claims at issue. Further, rather than focus on select causes of action in

---

[4] The Petition Date is one day prior to the signing of the State Court's Order Denying Motion to Vacate the Default Judgment and for TRO and is two days prior to the entry of said Order on the State Court docket.

[5] Mr. Laffey represents in his declaration that the facts to which he swears are based on "my personal knowledge, including my due diligence of documents and information in the hands of Plaintiffs, and without intention, authorization, or effect of waiving or compromising any privilege or immunity held by our clients."

their summary judgment efforts, Plaintiffs took a scattershot approach, seeking summary judgment on all their causes of action, often making conclusory claims about what "facts" are "indisputable" and about Debtor's purported intent, beliefs, and knowledge. Plaintiffs rely heavily on the 2017 State Court Judgment which, as noted, does not specify which causes of action resulted in that award against Debtor.

As discussed below, Plaintiffs have failed to meet their burden of proof to establish that they are entitled to summary judgment on any claim brought under § 523(a) or § 727(a).

## II.  LAW ON SUMMARY JUDGMENT

Rule 56(c) provides that summary judgment should be granted to the moving party if the Court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.4 (1986) (*quoting* Fed. R. Civ. P. 56(c)) (internal quotation marks omitted). A movant has the initial burden of establishing the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 322-23. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the movant meets its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is

not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

The Second Circuit has repeatedly noted that, "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir. 1988) (citing *Celotex Corp.*, 477 U.S. at 330 n.2 (1986) (Brennan, J., dissenting)); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 (2d Cir. 1995); *Burrell v. City Univ. of New York*, 894 F. Supp. 750, 757 (S.D.N.Y. 1995). "If, when viewing the evidence produced in the light most favorable to the non-movant, there is no genuine issue of material fact, then the entry of summary judgment is appropriate." *Pereira v. Cogan*, 267 B.R. 500, 506 (S.D.N.Y. 2001); *see Burrell*, 894 F. Supp. at 758 (citing *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir. 1991)).

## III.  ANALYSIS

For Plaintiffs to be entitled to summary judgment on their claim for a determination of exception to discharge under § 523(a), they must establish that there is no genuine issue of material fact on each element under their statutory bases asserted for a determination of non-dischargeability: § 523(a)(2)(A), (a)(4), and (a)(6). To be entitled to summary judgment on their claim for denial of discharge under § 727(a), Plaintiffs must establish that there are no genuine issues of material fact on each element under their asserted statutory bases for denial of discharge: § 727(a)(2), (a)(3), (a)(4), and 727(a)(5).

### Summary Judgment Request on the § 523(a) Claims

Plaintiffs rely most principally on collateral estoppel to establish that there is no genuine issue as to any material fact on their § 523(a) claims. They expressly premise their argument in

support of summary judgment on their § 523(a)(2) claim (which requires a showing that the subject debt was obtained by false pretenses, a false representation, or actual fraud) on the assertion that the 2017 State Court Judgment "adjudicated" Debtor's actions as "fraudulent" as "memorialized by" the 2017 State Court Judgment. In support of summary judgment on their § 523(a)(4) claim (which requires a showing that the debt was for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny) and their § 523(a)(6) claim (which requires a showing that the debt was for willful and malicious injury), Plaintiffs rely on various assertions of "indisputable" facts about Debtor's alleged intent, malice, and motivations—many of which appear to be premised on facts that Plaintiffs' claim were adjudicated in the 2017 State Court Judgment. Debtor responds by arguing that the 2017 State Court Judgment—a default judgment—does not operate to preclude the litigation of any issue. Therefore, the Court considers whether collateral estoppel— also known as issue preclusion—applies to the 2017 State Court Judgment.

Collateral estoppel is an equitable doctrine premised on notions of due process, fairness, finality of judgments, and conservation of court and litigant resources, and—when properly invoked—prevents a party from relitigating an issue clearly raised in a prior action and decided against that party. *Conte v. Justice,* 996 F.2d 1398, 1400 (2d Cir. 1993)(citing *Schwartz v. Public Adm'r of Bronx,* 24 N.Y.2d 65, 74, 298 N.Y.S.2d 955, 962, 246 N.E.2d 725, 730 (1969); *Gilberg v. Barbieri,* 53 N.Y.2d 285, 291, 441 N.Y.S.2d 49, 50, 423 N.E.2d 807, 808 (1981); *Murphy v. Gallagher,* 761 F.2d 878, 882 (2d Cir. 1985)); *see Leather v. Ten Eyck,* 180 F.3d 420, 424 (2d Cir.1999) (quoting *Schiro v. Farley,* 510 U.S. 222, 232, 114 S.Ct. 783 (1994)); *see Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 (1979)("Collateral estoppel . . . [has] the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party . . . and of promoting judicial economy by preventing needless litigation."). It is well-settled that

preclusion principles apply in bankruptcy, and that collateral estoppel may be used to establish the nondischargeability of a debt. *In re Snyder*, 939 F.3d 92, 100 (2d Cir. 2019)(citing *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006), and *Grogan v. Garner*, 498 U.S. 279, 284 n.11(1991)).

Just as federal courts may be called upon to give preclusive effect to each other's judgments, they also may be called upon to give preclusive effect to state court judgments. *In re Ferrandina*, 533 B.R. 11, 22 (Bankr. E.D.N.Y. 2015)(citing U.S. Const Art. IV, § 1 (Full Faith and Credit Clause), 28 U.S.C. § 1738, and cases omitted). As an equitable doctrine, collateral estoppel is not a matter of absolute right; rather, its invocation is influenced by considerations of fairness in the individual case. *Charter Oak Fire Ins. Co. v. Electrolux Home Prod., Inc.,* 882 F. Supp.2d 396, 402–03 (E.D.N.Y. 2012)(citing *Pennecom B.V. v. Merrill Lynch & Co.,* 372 F.3d 488, 493 (2d Cir. 2004)). Collateral estoppel rules are not "rigid or mechanical" and cannot be "reduced to some black letter formula." *Conte v. Justice,* 996 F.2d at 1400 (internal citations omitted); *see Denton v. Hyman (In re Hyman),* 502 F.3d 61, 65–66 (2d Cir. 2007) (opining that issue preclusion "is a flexible doctrine" whose application depends upon "general notions of fairness involving a practical inquiry into the realities of the litigation." (quoting *Jeffreys v. Griffin,* 1 N.Y.3d 34, 41, 801 N.E.2d 404, 769 N.Y.S.2d 184 (2003)).  For example, the application of collateral estoppel may be refused when "there is a compelling showing of unfairness or inadequacy in the prior litigation." *Charter Oak Fire Ins. Co. v. Electrolux Home Prod., Inc.,* 882 F. Supp.2d at 402  (internal citations omitted).

Collateral estoppel is available under both federal and New York law. While there is considerable overlap between federal collateral estoppel law and New York collateral estoppel

law, the doctrines are not entirely identical.[6]  Here, New York law applies, as the 2017 State

Court Judgment was issued by a state court deciding issues of state law.[7]

### 1.  Collateral Estoppel Analysis Applying the Two-Prong Test.

Under New York law, collateral estopped may be invoked in the context of a default

judgment. *Evans v. Ottimo,* 469 F.3d 278, 282 (2d Cir. 2006). While both sides briefed collateral

estoppel, neither cited the detailed analysis this Court undertook in *Ferrandina* on New York

state law on collateral estoppel. In *Ferrandina*, the Court recognized that, under the Second

Circuit's two-prong test, collateral estoppel may be invoked under New York law to preclude a

party from relitigating a default judgment when (1) the identical issue necessarily was decided in

the prior action and is decisive of the present action, and (2) the party to be precluded from

relitigating the issue had a full and fair opportunity to litigate the issue in the prior action. *In re*

*Ferrandina*, 533 B.R. at *23-24 (citing *Evans v. Ottimo,* 469 F.3d at 281). The burden of proof

under the two-prong test is bifurcated: the party seeking to invoke collateral estoppel has the

burden of demonstrating identity of issue, while the party seeking to defeat collateral estoppel

has the burden of establishing the absence of a full and fair opportunity to litigate the issue. *Id.* at

*24 (internal citations omitted).

As to the first *Ferrandina* prong—that the identical issue necessarily was decided in the

prior action, a review of the orders in the 2017 State Court Case makes evident that collateral

estoppel is not properly invoked. Plaintiffs sued Debtor for fraudulent conveyances under New

---

[6] Most notably, the federal collateral estoppel doctrine requires that the issue had previously been "actually litigated," not merely that the party opposing collateral estoppel "had a full and fair opportunity to litigate the issue."

[7] Typically, federal common law is applied to determine the preclusive effect of a federal judgment, while state law is applied to determine the preclusive effect a federal court is to give a state court judgment. *See Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 286 (2d Cir. 2002); *Guggenheim Capital, LLC v. Birnbaum (In re Birnbaum),* 513 B.R. 788, 800 (Bankr. E.D.N.Y. 2014). Debtor's liability on the claims brought in New York State Court was determined under New York state law; therefore, this Court apply New York state law on issue preclusion. The Court will not engage in a separate analysis under the federal standards.

York Creditor Law §§ 273, 274, 276, and 278, and on a common law claim for unjust enrichment. The 2017 State Court Judgment makes no findings of fact, other than to memorialize that the motion to default judgment was filed following Debtor's "failure to appear at a mandatory preliminary conference, to respond to discovery demands and otherwise to participate in the litigation." It makes no findings of fraud, false pretenses, or false representations, embezzlement, or willfulness; it adopts no facts alleged by Plaintiffs in their state court complaint; it does not specify whether judgment was rendered on the actual fraudulent conveyance claims or on the constructive fraudulent conveyance claims, or on the unjust enrichment claim, which would not require a finding of fraud. The 2017 State Court Judgment merely orders a finding of default after Debtor failed to properly respond to the underlying complaint and to participate in the litigation and enters monetary judgments. Under 2017 State Court Judgment, it is possible that Debtor was held liable by default only for unjust enrichment or for constructively fraudulent transfers, but not for actual fraud. Accordingly, the Court concludes that Plaintiffs have failed to meet their burden to show that the issue of whether Debtor committed fraud was necessarily decided, or that whether Debtor otherwise acted in a way sufficient to fulfill all elements of their § 523(a)(2), (4), or (6) claims was necessarily decided.

Plaintiffs also argue that collateral estoppel nevertheless is properly invoked under the "bad conduct" exception discussed in *In re Snyder*, 939 F.3d 92, 100 (2d Cir. 2019). In *Snyder*, the Eastern District of New York determined in pre-bankruptcy litigation that the debtors had engaged in "willful, cavalier, and sanctionable" behavior and entered a default judgment against them. After the debtors filed chapter 7 in Connecticut, the bankruptcy court applied collateral estoppel effect to that EDNY judgment in an action brought under § 523(4), (6). On appeal from the bankruptcy judgment, the Second Circuit stated it was joining several other circuits in holding that "where the

default judgment is entered as a sanction for bad conduct, and the party being estopped had the opportunity to participate in the underlying litigation, the default judgment has preclusive effect when determining the nondischargeability of a debt in a bankruptcy proceeding." *Id* at 100. However, the Second Circuit reversed the application of collateral estoppel to the § 523(4) and (6) claims, as the lower courts had not adequately matched the findings made in the EDNY action to the issues asserted in the bankruptcy action. *Id.* at 103-05. Thus, here, even if *Snyder* resolved whether Debtor had a full and fair opportunity to litigate the issues in the 2017 action, it does not resolve whether the identical issues necessarily decided in the prior action are decisive of the present action.

Because the two prongs of collateral estoppel are conjunctive, and because the Court has determined that Plaintiffs failed to satisfy the first prong, that the identical issue necessarily was decided in the prior action and is decisive of the present action, summary judgment is denied.

### Analysis of Summary Judgment Request on the § 727(a) Claims

Plaintiffs also seek summary judgment on their claims for denial of discharge under subsections of § 727(a): § 727(a)(2)(concealing property with intent to hinder, delay, or defraud a creditor), § 727(a)(3)(unjustifiably concealing, destroying, falsifying or failing to keep or preserve books and records from which the debtor's financial condition or business transactions might be ascertained), § 727(a)(4)(knowingly and fraudulently making a false oath), or § 727(a)(5)(failing to satisfactorily explain loss of assets or deficiency of assets to meet liabilities). Each of the causes of action under § 727(a)(2) and (4) require Plaintiffs to prove that Debtor acted with fraudulent or malevolent intent, and § 727(a)(3) and (5) require proof that Debtor acted without justification or unsatisfactorily. Plaintiffs also fail to meet their burden on these claims.

Discharge in bankruptcy operates as an injunction against efforts collect upon dischargeable prepetition debts of the debtor. 11 U.S.C. § 524(a). However, discharge is a privilege, not a right, and is reserved only for the honest but unfortunate debtor. *Christy v. Kowalski (In re Kowalski),* 316 B.R. 596, 600–01 (Bankr. E.D.N.Y. 2004). As such, § 727(a) provides that the bankruptcy court shall entered a discharge unless one of the statutorily enumerated conditions apply—most of which require a showing of bad faith, dishonesty, or other bad conduct by the debtor in connection with the bankruptcy case or estate. Because denial of discharge is an extreme penalty, conditions for denial are construed strictly against the objector and liberally in favor of the debtor, with courts exercising even greater caution when considering denial of discharge sought on summary judgment. *In re Antoniou,* 515 B.R. 9, 16 (Bankr. E.D.N.Y. 2014)(citing *State Bank of India v. Chalasani (In re Chalasani),* 92 F.3d 1300, 1310 (2d Cir. 1996)).

Applying this strict standard, the Court determines that Plaintiffs failed to meet their burden of proving the absence of any genuine issue of material fact on any of their § 727 claims. Without the 2017 State Court Judgment on which to rely via collateral estoppel, many of the material facts asserted by Plaintiffs are merely allegations—allegations about Debtor's intent, belief, and knowledge about various representations, conduct, and actions. Even if those allegations appear credible, credibility is not at issue at this juncture. Debtor denies the allegations and has presented controverting affidavits from herself and her husband, the truth of which has to be inferred at this stage, and the veracity of which may be challenged at trial. For these reasons, the Court denies the summary judgment request as to the § 727(a) claims.

## IV. FACTS ESTABLISHED FOR TRIAL

Debtor's pleadings and supporting documentation filed in response to the Motion to Summary Judgment, including the Opposition to the Motion for Summary Judgment [dkt. item

47], establish that Debtor does not dispute that the Transfers in fact occurred during the Transfer Period and in the amounts as alleged by Plaintiffs. However, it is equally clear that Debtor disagrees that the facts establish as a matter of law that she acted with the requisite *mens rea* in connection with the Transfers to establish an exception to discharge. Debtor denies that she had fraudulent intent in connection with the Transfers, or that the Transfers involved any fraudulent representation, false pretenses, or false statement by her; any defalcation; or any intent by her to cause a willful and malicious injury.

Accordingly, under Rule 56(d), it is established for trial purposes that the Transfers occurred during the Transfer Period, in the amounts and on the dates as alleged by Plaintiffs in the Complaint. Those issues will not be litigated at trial. However, as to all other facts related to the claims, including the intent, knowledge, willfulness or maliciousness of Debtor in connection with the Transfers, or the falsity of fraudulent nature of any representation or statement by Debtor in connection with the Transfers, Plaintiffs will continue to bear their burden of proof at trial.

## V. CONCLUSION

For the reasons set forth, the Court holds that collateral estoppel cannot be invoked by Plaintiffs as a matter of law to establish that there is no material issue of fact on their claims under either § 523(a) or § 727(a) claims. And because Plaintiffs offer no other theory or sufficient undisputed facts on which the summary judgment record would establish that there is no genuine issue of material fact on any of their asserted claims for relief, the Court hereby **ORDERS**, that Plaintiffs' request for summary judgment is denied in its entirety.

The Court shall separately issue a trial scheduling order.



Dated: January 12, 2023
      Central Islip, New York

_____
Alan S. Trust
Chief United States Bankruptcy Judge